Fred W. Eggert, J.
Defendants move pursuant to CPL 270.10 to challenge the panel of jurors on the grounds of intentional and systematic exclusion of minority ethnic groups and those under the age of 21 years.
Pursuant to said statute, an extensive hearing was held at which the Hon. Leo Levy, County Clerk of Bronx County, testified as to the method of selection employed by his office and voluminous documentary evidence was presented by the defendants.
*62 Mr. Levy testified to the following procedure in jury selection in effect when the current panel was chosen. Qualification notices were sent at random from the list of registered voters to every fourth name. The recipients were required to complete qualification questionnaires and from those found to be eligible, notices to serve were subsequently sent. The random method employed is without regard to any factors other than mechanical selection of every fourth name on the registered voters’ lists of the entire county. The county clerk maintains no separate records of racial, ethnic or age data. There is no breakdown according to race as contained in census tracts, nor does selection include an attempt to equalize the numbers from among assembly districts according to population, although there is a wide disparity in registered voters in the various districts.
Defendants offered, among others, voluminous documentation consisting of census data of racial composition by postal zones; income and employment categories; a "Survey of the Non-Election Uses of Voter Registration Lists and the Effects of these Uses on Voter Registration Levels”, prepared by Senator Edward M. Kennedy and the Office of Federal Elections, a report, dated September 5, 1968, on a voter registration drive prepared for Mayor John V. Lindsay; together with other informative and reliable data.
The results of this documentation are, in summary, that the numbers of Black and Hispanic voters are disproportionately small in relation to their total population in Bronx County. It is undisputable that areas containing the highest numbers of nonwhites have the lowest percentage of registered voters, while areas with the highest white population have correspondingly high voter registration. Thus, defendants argue, the composition of juries, both Grand and petit, in Bronx County, do not represent a fair cross section of the community resulting in invidious discrimination (Alexander v Louisiana, 405 US 625).
Defendants’ challenges to both Grand and petit juries will be considered together since the same standards of selection are equally applicable (Alessi v Nadjari, 47 AD2d 189).
Thus, the question squarely presented by this motion is whether the use of voter registration lists alone in jury selection is constitutionally impermissible.
To support this view, defendants cite Taylor v Louisiana (419 US 522) for the proposition that in determining the *63 fairness of the selection employed, it is the "impact on the defendant” which prevails over the "good faith in making individual selections” (Alexander v Louisiana, 405 US 625, supra).
Taylor (supra) held, however, that the systematic exclusion of women resulting from a system requiring them to come forward as volunteers for jury service was invidiously discriminatory. It did not mandate quotas nor a mathematical balance of various racial or other groups “mirroring” the community, carefully holding (p 538): "we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition * * * but the jury wheels, pools of names, panels or, venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.”
Although Taylor has been held not to be retroactive (Daniel v Louisiana, 420 US 31), it is, nevertheless, in harmony with existing New York law as articulated in People v Chestnut (26 NY2d 481, 488) that "in order to sustain a claim of an illegally constituted jury, it is essential * * * that intentional and systematic discrimination must be proved and that a showing of mathematical disparity, without more, is insufficient to meet this burden.” (See, also, People v Horton, 18 NY2d 355; People v Agron, 10 NY2d 130.) Defendants here do not claim any "intentional and systematic discrimination”. Instead, they argue such discrimination results, ipso facto, from the disparity between the respective voter registrations of white and nonwhites. Thus, their argument falls squarely within the holdings of Taylor and Chestnut that a mere imbalance of a particular group does not, without more, constitute a denial of defendants’ Sixth and Fourteenth Amendments rights. This court finds, therefore, that the selection system in question, although not precisely mirroring the community, does fairly represent a cross section of the community since the random selection draws upon all segments of the community without systematic exclusion of any single group. Nor do the observations of this court of the composition of the panels agree with the conclusions of the survey by defendant Rodriquez’ investigator noting an alleged "wide disparity of whites and non-whites”. This court notes the large and increasing numbers of Blacks and Hispanics serving on *64 the panels. This is not to say the system is without fault. Indeed, Mr. Levy, in his testimony, readily acknowledged so and indicated the system has been upgraded by the use of computers drawing upon sources other than voter registration records alone. Thus, defendants have failed to establish that the disparity between whites and nonwhites on jury panels results from intentional and systematic exclusion of minority groups.
Defendant Rosado further claims the panel is tainted by the failure to include a proportionate number of those in the 18-to 21-year group. It has been held there is no rational basis to differentiate this group from any other age group, notwithstanding they may be underrepresented in the panel, which, indeed, this court finds in fact they are. As the county clerk conceded, no special records of jurors by age are maintained by his office. There are several reasons why jury service does not appeal to this group, prominent among them being the large percentage of whom are students and thus unwilling to lose time from their classroom pursuits. Nevertheless, their absence from the panels does not, per se, render the panel an unrepresentative cross section of the community (United States v Olson, 473 F2d 686; Chase v United States, 468 F2d 141; United States v Kuhn, 441 F2d 179; United States v Duncan, 456 F2d 1401). Although the evidence shows a disparity of those in the 18- to 21-age group called for jury service, this court finds no basis for a finding of invidious discrimination practiced against this or any other age group.
Accordingly, the defendants’ challenges to the panels of both the Grand and petit juries on grounds of illegal constitution thereof are disallowed.